## Iroquois Furnace Company, Garnishee, v. Wilkin Manufacturing Company, for use, etc.

1. GARNISHMENT—*What the Garnishee May Contest.*—A garnishee may be heard to contest the findings and judgment against the original creditor only in case the court entering the judgment did not have jurisdiction of the parties and the subject-matter.

2. SAME—*When a Judgment Will Bar Proceedings by Original Claimant Against Garnishee.*—The judgment of a court not having such jurisdiction will not be a bar to proceedings by the original claimant against the garnishee. If, however, the court below had such jurisdiction then the garnishee can not be heard to contest the correctness of such judgment.

3. CORPORATIONS—*Residence of, etc.—Application of the Attachment Act.*—A corporation can not have a residence, in the ordinary sense of the term, but if it be a foreign corporation the attachment act applies to it the same as to a non-resident natural person. Whether it be a foreign corporation must be determined by the place of its organization.

4. SAME—*In Proceedings by Attachment—Affidavit.*—In proceedings against a corporation by attachment it is not sufficient to state in the affidavit that the defendant is not a resident of this State, and this defect is not cured by adding, in the affidavit, that defendant's "place of residence" is Milwaukee, in the State of Wisconsin.

**Attachment and Garnishee Proceedings.**—Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in the Branch Appellate Court of the First District at the March term, 1898. Affirmed. Opinion filed May 31, 1898.

### Statement.

The inception of this litigation was a suit in attachment by Pickards, Brown & Co. v. Wilkin Manufacturing Co. The attachment affidavit stated that the defendant "is not a resident of this State, and that its place of residence is at Milwaukee, in the State of Wisconsin." The appellant was served as a garnishee in that proceeding September 1, 1891.

October 20, 1891, John Barth filed his interpleader, simply claiming that the money due from appellant to appellee belonged to him. To this interpleader the plaintiff below demurred. June 13, 1893, said Barth, by leave of court, filed his amended interpleader stating that the appellee " was a corporation organized and doing business under the laws of the State of Wisconsin;" that, being insolvent, the defendant, in pursuance of the statute of Wisconsin, executed and delivered to said interpleader a voluntary assignment of all its choses in action and assets of every kind, which was accepted by said Barth prior to the commencement of said attachment suit; that the fund in the hands of said garnishee was the property of said Barth; and that under the laws of Wisconsin he was authorized to sue for and recover the same.

December 12, 1891, John Featherstone's Sons, a corporation, filed its interpleader claiming the funds due from appellant to appellee, by virtue of an assignment thereof made June 9, 1891, by said appellee.

October 22, 1891, appellant filed its answer as garnishee, stating that it had no property or assets in its charge belonging to said appellee; that it was not indebted to said appellee; that it had purchased of appellee two certain engines guaranteed by it to be of a certain quality capable of performing certain service; that such engines were not equal to the guaranty; that the garnishee could not at that time state the exact amount of its loss by reason of the failure of such guaranty; that it had been notified by John Featherstone's Sons that appellee had assigned its claims against appellant to said Featherstone's Sons; that certain mechanics' liens and attachment suits had been commenced;

Iroquois Furnace Co. v. Wilkin Mfg. Co.

and that said Barth, a resident of Wisconsin, claims by virtue of an assignment from appellee the indebtedness, if any, owing by appellant to appellee, and asks that said Barth may be made a party to this proceeding.

October 29th, default of appellee was ordered in the attachment proceeding and judgment entered. The appellee was not personally served with process, but by publication of notice, as against a non-resident.

Issues were duly made up as between the plaintiffs, the garnishee and the interpleaders, and on the 11th day of November, 1896, by agreement of parties, the cause was submitted to the court for trial without a jury. The findings and judgment of the court are that appellee recover from appellant the sum of $12,250, for the use of the plaintiff in said attachment suit and of said interpleaders.

DEFREES, BRACE & RITTER, attorneys for appellant.

BARNUM, HUMPHREY & BARNUM; KNIGHT & BROWN; WINKLER, FLANDERS, SMITH, BOTTUM & VILAS; CRATTY BROS., JARVIS & CLEVELAND, attorneys for appellee.

MR. JUSTICE HORTON, after making the foregoing statement, delivered the opinion of the court.

The appellant is a party to this proceeding only as garnishee. It may be heard to contest the finding and judgment against the appellee only in case the court entering the judgment did not have jurisdiction of the parties and the subject-matter. The reason for this rule is that the judgment of a court not having such jurisdiction would not be a bar to proceedings by the original claimant against the garnishee. If, however, the court below had such jurisdiction, then the garnishee can not be heard to contest the correctness of said judgment. The reason for the rule not being present, the rule has no application.

The only ground upon which the attachment writ was issued is that appellee (defendant below) was a non-resident. The language of the affidavit is that the defendant

" is not a resident of this State, and that its place of residence is at Milwaukee, in the State of Wisconsin." There is no statement either in the affidavit or declaration as to whether the defendant is a corporation. It appears by subsequent pleadings that it is. It can not have a " residence," in the ordinary sense of the term, but if it be a foreign corporation, the attachment act applies to it the same as to a non-resident natural person. Whether it be a foreign corporation must be determined by the place of its organization. That is not stated in the affidavit. It is not sufficient, when referring to a corporation, to state in the affidavit that the defendant " is not a resident of this State." This defect is not cured by adding in the affidavit that defendant's " place of residence is Milwaukee, in the State of Wisconsin." The affidavit of itself, and standing alone, is not sufficient to sustain the jurisdiction.

This suit was commenced August 28, 1891. The notice was that defendant appear " on or before the first day of the next term thereof, * * * on the third Monday of August, 1891." The date named for the defendant to appear had already passed. That does not, however, make this notice void or the proceedings based upon it voidable. The defendant is notified to appear " the first day of the next term " of the court. The words " on the third Monday of August, 1891," may be treated as surplusage and the notice is then sufficient. Rogers v. Miller, 4 Scam. 333.

The defect in the affidavit as to the " residence " of the defendant is cured by subsequent pleadings and proceedings. The interpleading by Barth is in legal effect an appearance by the defendant. The issues presented by his interpleader were heard by the trial court, and there is no claim by assignment of error or in brief or argument that the averments thereof were not sustained by the testimony. We must therefore assume that the appellee voluntarily assigned all its title to and interest in the money due from appellant to it to said Barth, and that said Barth had full power and authority to appear for and in the name of appellee. That is a waiver of any defect in the affidavit or attachment proceeding so far as the question of jurisdiction is involved.

But it appears by the interpleader filed by said Barth "that the defendant company is a corporation organized under the laws of Wisconsin." This may also be held to be sufficient to cure the defect in the affidavit as to residence and to sustain the jurisdiction of the Circuit Court. Lafayette Ins. Co. v. French, 18 How. (U. S.) 404; Muller v. Daws, 94 U. S. 445.

The trial court had jurisdiction and its judgment is a bar to any other or further proceeding by the appellee or its assignee against appellant for the claim herein litigated. It can not, therefore, be heard to contest the correctness or validity of the judgment as against the appellee.

The claim against appellant, upon which judgment was entered, grew out of a contract between appellee and appellant for the manufacture and sale by appellee to appellant of two blowing engines. The contract is in form a letter by appellee to appellant, with specifications, and a letter of acceptance by appellant. In these letters the plural pronoun " we " is used for the corporate names. In the proposal which was accepted by appellant, appellee says:

" We propose to furnish you two blowing engines complete, as per specifications enclosed, for $28,000, F. O. B. cars at So. Chicago."

" We send a man to superintend the erection and start the engines; we to pay his time and you his traveling expenses and board. The first engine to be delivered six months from date of order, the second, one month after the first one. We guarantee all of these to be of the best material and workmanship, and to be equal or superior to any blowing engine on the market."

The principal controversy as to this contract is as to the construction to be given to the guaranty in the last sentence above quoted. As stated in the appellant's brief, the theory of the appellant as to the construction of the contract in this regard is set out in the 2d, 3d, 4th, 5th and 8th propositions of law submitted to and refused by the court, which are as follows :

" 2. The court holds that the true construction of said

contract is that the engines to be furnished by the Wilkin Manufacturing Company to the Iroquois Furnace Company should not only be constructed in accordance with the specifications, but that same, when so constructed, should be equal or superior to any blowing engine on the market."

"3. The court holds that the words 'to be equal or superior to any blowing engine on the market,' contained in said proposition, are equivalent to an undertaking or agreement on the part of said Wilkin Manufacturing Company that the engines should be constructed in such manner as to make them equal or superior in workmanship; and upon such plan as to make them as efficient in service as any blowing engine on the market."

"4. The court holds that the words 'any blowing engine on the market,' contained in said proposition, mean any kind or pattern of blowing engine which any known and established manufacturer of such wares was accustomed to manufacture and sell in the markets of the world at the date of said proposition."

"5. The court holds that the words 'any blowing engine on the market,' contained in said proposition, mean any kind or pattern of blowing engine which any known and established manufacturer of such wares was accustomed to manufacture and sell in the market of the United States at the date of said proposition."

"8. The court holds that the Wilkin Manufacturing Company, by its contract aforesaid, undertook and agreed to construct the engines therein mentioned in such manner and upon such plan that they would be, as a whole, as good, durable, efficient and serviceable as any blowing engine which other manufacturers of such wares were accustomed to manufacture and sell."

There were several rulings by the court as to the admission of testimony which present the same question. The contract is dated July 2, 1890. The trial was in November, 1896. Said 2d, 3d, and 8th propositions omit to name any time. The court was asked thereby to hold that the two engines in question contracted for in July, 1890, "should be

equal or superior to any blowing engine on the market" between six and seven years thereafter. This must have been intended, because said 4th and 5th propositions are limited to "the date" of said contract.

But said propositions are fatally at fault in that they entirely disregard the specifications which form a part of the contract. The contention of appellant is, in effect, that the specifications are mere surplusage; that the duties and obligations resting upon appellee are the same under its guaranty that the engines in question should "be equal or superior to any blowing engine on the market," as they would be if there were no details and specifications in said contract.

The trial court made these statements to appellant's attorneys at the time of the trial, viz.:

"If you can show that any other engine of precisely the same specifications, or substantially the specifications named here, was on the market at the time, I will allow you to compare this engine, but it must not differ in the specifications in any material particular.

"I will state to you now that if you can find any engine that was on the market, then constructed, on the same specifications that these engines were constructed on, viz.: the specifications written and attached to this contract, I will allow you to compare these engines."

Said propositions may also have been refused for the reason that they entirely ignore the fact that blowing engines may be constructed much larger than those described in the specifications. The guaranty clause, when construed in connection with the balance of the contract, as it must be, means that the engines are "to be equal or superior to any blowing engine on the market" of the size, dimensions, etc., detailed in the specifications. Suppose that there was an engine on the market with a blowing cylinder twice the diameter and with twice the stroke of that described in this contract, and with steam cylinder, valve area, and all other parts in proportion. The cost and capacity of such an engine would be very much more than that of one of the

engines described in this contract. Appellee did not guarantee that one of the engines in question should be equal to such an engine. Nor did appellee guarantee that the engines in question should be equal to any that might be constructed anywhere in the world within the next six years after making its contract. The trial court marked said propositions "refused," and in so doing committed no error.

A supplemental contract was entered into by these parties, extending the time for the delivery of said engines, and providing that if not delivered at the times fixed by such extension, appellee should pay to appellant "as liquidated damages for any delay * * * the sum of fifty dollars per day." The engines were not delivered at the time fixed. Appellant contends that it should be allowed the fixed sum of fifty dollars per day as damages. Appellee contends that the sum named is in the nature of a penalty, and that appellant should be allowed such damages only as the proof shows it to have actually suffered.

The books abound in cases upon this much mooted question, and it has been exhaustively argued by counsel in this case. We do not, however, deem it necessary to enter at length into a discussion of it here. The court below held correctly that, under this contract and the circumstances of this case, the provision was in the nature of a penalty and not liquidated damages.

Perceiving no material error, the judgment of the Circuit Court is affirmed.